UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 18 – 40100 |
| Plaintiff, | INFORMATION |
| vs. | CONSPIRACY TO COMMIT WIRE FRAUD<br>18 U.S.C. § 1349 |
| WALLACE TANG;<br>MICROASSEMBLY TECHNOLOGIES, INCORPORATED;<br>LASERLITH CORPORATION;<br>BLACK HILLS NANOSYSTEMS CORPORATION; and<br>BLUE SKY ENGINEERING, INCORPORATED, | WIRE FRAUD<br>18 U.S.C. § 1343 |
| Defendants. | |

The United States of America, by and through Assistant United States Attorney Jeremy R. Jehangiri, charges and informs the Court:

**COUNT 1**

**Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349**

I.  <u>Conspiracy</u>:

1.  Beginning at a time unknown, but no later than in or about 2012, and continuing through 2016, within the State and District of South Dakota and elsewhere, the Defendants,

>  MICROASSEMBLY TECHNOLOGIES, INCORPORATED,
>  LASERLITH CORPORATION,
>  BLACK HILLS NANOSYSTEMS CORPORATION, and
>  BLUE SKY ENGINEERING, INCORPORATED,

and others both known and unknown to the Grand Jury and United States, did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other to devise a scheme and artifice to defraud, and obtain money and property by means of false and fraudulent pretenses, representations, and promises, by sending and causing to be sent a sign, signal, and sound to be transmitted by means of wire communications in interstate and foreign commerce, in violation of Title 18 U.S.C. § 1349.

II.     Relevant Parties, Persons, and Entities:

At all times relevant to this case:

1.      On May 21, 1998, Defendant MicroAssembly Technologies, Incorporated ("MicroAssembly"), by and through its executive officer Wallace Tang, registered as a domestic, for-profit corporation with the California Secretary of State.  Effective April 1, 2015, the address for MicroAssembly was 3411 Regatta Boulevard, Richmond, California 94804.  In 2014, MicroAssembly also claimed a Fargo, North Dakota, address in state filings in California.

2.      On September 5, 2008, Defendant Laserlith Corporation ("Laserlith"), by and through its President Sine Chao, was registered as a foreign, for-profit corporation with the North Dakota Secretary of State.  Laserlith was previously registered as a foreign corporation in California on August 24, 2007.  Effective March 20, 2014, the address for Laserlith was 4200 James Ray Drive, Suite 501, Grand Forks, North Dakota 58202.

3. On July 25, 2008, Defendant Black Hills Nanosystems Corporation ("Black Hills Nano"), by and through its President Gina Kim, was registered as a foreign, for-profit corporation with the South Dakota Secretary of State. Black Hills Nano's registered agent for service of process was located in Sioux Falls, South Dakota. Effective January 24, 2011, the address for Black Hills Nano was 2445 Dyess Avenue, Rapid City, South Dakota 57701. On May 2, 2014, Black Hills Nano changed the address of its principal executive office to 324 St. Joseph Street, Suite 202, Rapid City, South Dakota 57701. Black Hills Nano applied for, and received, its corporate withdrawal on October 20, 2016, listing Black Hills Nano's principal office at an address in San Francisco, California.

4. On July 5, 2012, Defendant Blue Sky Engineering, Incorporated ("Blue Sky"), at the direction and behest of Tang, was registered as a foreign, for-profit corporation with the North Dakota Secretary of State. Blue Sky was registered as a foreign corporation in California on May 15, 2015. Effective May 15, 2013, the address for Blue Sky was 417 Maine Avenue, Suite 3, Fargo, North Dakota 58103. While an individual known to the Grand Jury and United States served as President of Blue Sky for a period of time, Tang served as Blue Sky's Chief Executive Officer, Chief Financial Officer, Secretary, and bank account signatory.

5. MicroAssembly was the parent corporate entity of Laserlith, Black Hills Nano, and Blue Sky, and all of these entities were related and conducted operations in the State and District of South Dakota, affecting interstate commerce. Although the principals interchanged the names of the entities for various projects, the work of these entities significantly overlapped. Chao also

served as MicroAssembly's Chief Financial Officer and as a former Director. Kim worked as an engineer for MicroAssembly until approximately 2006.

      6.     While Kim served as Black Hills Nano's President, Tang served as its Director of Research and Development.

      7.     While Chao served as Laserlith's President, Tang served as a company Officer and Kim served as its Corporate Secretary.

III.    Object of the Conspiracy:

The object of Defendants' conspiracy was to obtain federally-funded projects by and through material misrepresentations, statements, and omissions, thereby depriving the United States the ability to fund other small businesses and resulting in the enrichment of the Defendants, its Principals, and others known to the Grand Jury and United States.

IV.    Federal Small Business Programs:

      1.     Through Section 9(j) of the Small Business Act, federal law required that the Small Business Administration ("SBA") issue Small Business Innovation Research ("SBIR") Program and Small Business Transfer Technology Research ("STTR") Program Policy Directives for the general conduct of the SBIR and STTR programs (collectively, "the programs") within the U.S. government.  Generally, the statutory purposes of the programs were (1) to strengthen the role of innovative Small Business Concerns ("SBCs") in federally-funded research and development, and (2) to increase competition, productivity, and economic growth.

2.     U.S. government departments, agencies, and offices, including the National Science Foundation ("NSF"), the National Aeronautics and Space Administration ("NASA"), and the Department of Energy ("DOE") participated in the programs.

3.     All SBIR and STTR proposals were required to be electronically submitted to the federal agency offering the grant or contract opportunity. NSF's, NASA's, and DOE's computer servers used to receive contract proposals were located in Virginia, Mississippi and Maryland, and Virginia, respectively. Federal SBIR and STTR grant and contract award payments were electronically transferred from the associated federal agency, through the United States Department of the Treasury, and then wired to a business bank account identified by the awardee.

4.     Each project had to have a principal investigator ("PI"). The PI is the one individual designated by the applicant to provide the scientific and technical direction to a project supported by the funding agreement. The applicant had to designate the PI in his or her proposal and in the award. The program had rules about who could serve as a PI, including that PIs were required to be primarily employed (generally, more than 50 percent of the PI's employed hours) with the business receiving the award. This meant that the PI could not be employed full-time or even 50 percent with another company, organization, or entity. In the proposal, the applicant was required to describe the nature of the PI's activities, the amount of time the PI would personally apply to the project, and the qualifications and capabilities of the proposed PI. Primary employment of the PI was generally certified in each proposal.

5. Applicants for funding must certify at various times during the award that "essentially equivalent" work, or a portion thereof, has not been funded by another Federal agency. "Essentially equivalent" work is defined as work that is substantially the same research, which is proposed for funding in more than one contract proposal or grant application submitted to the same Federal agency or submitted to two or more different Federal agencies for review and funding consideration; or work where a specific research objective and the research design for accomplishing the objective are the same or closely related to another proposal or award, regardless of the funding source.

6. Each project must include a list of senior or key personnel, who are individuals who have committed to work on the project and who possess specialized knowledge or skills that are critical for the completion of the project.

7. Each certified proposal submitted to the U.S. government was evaluated and scored on its own merits. The proposal evaluators relied upon the truthfulness of what was submitted to them by the applicants. NSF, NASA, and DOE used the following, or a substantively similar, certification: "By signing and submitting this proposal, the Authorized Organizational Representative or Individual Applicant is: (1) certifying that statements made herein are true and complete to the best of his/her knowledge; and (2) agreeing to accept the obligation to comply with NSF award terms and conditions if an award is made as a result of this application. . . . Willful provision of false information in this application and its supporting documents or in reports required under an ensuing award is a criminal offense (U. S. Code, Title 18, Section 1001)."

V.  <u>Manner, Means, and Acts of Conspiracy</u>:

In furtherance of the conspiracy and to accomplish the object thereof, Defendants MicroAssembly, Laserlith, Black Hills Nano, and Blue Sky, by and through Principals Tang, Chao, and Kim, did commit the following overt acts, as well as others, in the District of South Dakota and elsewhere, and at all times relevant to this case:

1. Defendants applied for and received federal awards. Defendants communicated with, transmitted proposals through, and received payments by electronic communications and wires. These electronic transmissions and wires were interstate.

2. Defendants applied for and received federal awards for essentially equivalent work, or portions thereof, concealing the existence of the awards and the relationships between related companies from the awarding agencies.

3. During the application process, Defendants misrepresented the existence and use of distinct company facilities, equipment, and operations in South Dakota and North Dakota, and elsewhere outside of California. These representations and statements were false in that all of the companies were, at certain times, co-located in a common facility in Richmond, California, sharing the same resources and performing essentially equivalent work, or portions thereof.

4. Between 2012 and 2016, Defendants submitted, or caused the submission of, wire transmissions of approximately forty-eight (48) false claims and materially false statements with knowledge of their falsity, solely to obtain federal awards. "Knowledge" is defined as being (1) actual knowledge, (2)

deliberate ignorance of the truth or falsity of the information, or (3) reckless disregard of the truth or falsity of the information. The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

5. Defendants' actions, false statements, and misrepresentations included the preparation and submission of proposals for awards under the NSF, NASA, and DOE programs, specifically involving costs, employees, the eligibility of principal investigators, suitability of facilities, location of facilities, subcontractors, consultants, letters of support, and certifications submitted to NSA, NASA, and DOE.

6. Defendants' actions, false statements, and material misrepresentations resulted in the receipt of payments from the U.S. government. The fraudulently-obtained NSF, NASA, and DOE awards totaled $1,084,418.60.

7. As a result of Defendants' aforementioned scheme and artifice to defraud and to obtain money and property by means of false, fictitious, and fraudulent pretenses, representations, and promises relating to material facts, Defendants knowingly presented or caused to be presented false or fraudulent proposals via interstate wire transmissions and unlawfully obtained awards from NSF, NASA, and DOE, as set forth below:

| Awarding Agency & Year | Awarded Defendant & Amount | Nature of Project & Proposal Number |
|---|---|---|
| NSF 2014 | Laserlith $734,890.00 | Micromachined components for wireless applications regarding proposal number 1431008 |
| NSF 2014 | Black Hills Nano $224,946.00 | MEMS Reconfigurable Antenna for Portable Wireless Devices regarding proposal number 1417284 |
| NSF 2013 | Blue Sky $149,994.00 | High Efficiency Flexible Solar Panels regarding proposal number 1315777 |
| NSF 2012 | Laserlith $149,497.00 | Micromachined Varactor for Antenna Impedance Matching regarding proposal number 1217624 |
| NASA 2013 | Black Hills Nano $124,942.77 | Low-Cost Multi-Junction Photovoltaic Cells regarding proposal number H8.04-9546 |
| DOE 2012 | Black Hills Nano $146,819.83 | Optimal Multijunction Solar Cells for CPV Under Realistic Conditions regarding proposal number 203324 |
| NSF 2013 | Laserlith $179,479.00 | RF Mems Relay for ATE Applications regarding proposal number 1143347 |

These awards amounted to $1,710,568.60. NSF award-numbers 1431008 (Laserlith) and 1417284 (Black Hills Nano) were terminated when Defendants' conduct was discovered. Upon terminating these awards, NSF recovered $551,168.00 and $74,982.00 from each award, respectively, thereby bringing the total loss to the United States of $1,084,418.60.

Defendants' actions were in violation of 18 U.S.C. § 1349.

**COUNT 2**

**Wire Fraud – 18 U.S.C. § 1343**

All of the allegations set forth in Count 1 are hereby re-alleged and incorporated by reference herein.

On or about the 28th day of January, 2015, in the District of South Dakota and elsewhere, the Defendant, Wallace Tang, for the purpose of executing and

attempting to execute the aforementioned scheme and artifice to defraud the United States and its agencies and to obtain money and property by means of false, fictitious and fraudulent pretenses, representations, and promises relating to material facts, did knowingly transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce writings, signs, signals, pictures, and sounds as follows: Wire Communication from MicroAssembly, by and through Blue Sky with Black Hills Nano serving as subcontractor, containing NASA proposal numbered H8.03-8999, entitled "Low Cost Multi-Junction Photovoltaic Panels."  This proposal was essentially equivalent work, or a portion thereof, to proposals submitted as part of the Conspiracy to Commit Wire Fraud, as set forth in Count 1.

All of Defendant's conduct was in violation of 18 U.S.C. § 1343.

**FORFEITURE**

The allegations contained in Counts 1 and 2 of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c).  Upon conviction of any or all of the violations alleged in Counts 1 and 2 of this Information, the Defendants,

WALLACE TANG,
MICROASSEMBLY TECHNOLOGIES,
LASERLITH CORPORATION,
BLACK HILLS NANOSYSTEMS CORPORATION, and
BLUE SKY ENGINEERING,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any and all right, title, and interest they may have in

any property, real or personal, which constitutes or is derived from proceeds traceable to the violations.

If any of the property described above, as a result of any act or omission of any of the Defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1).

Dated this 27th day of July, 2018.

                              RONALD A. PARSONS, JR.
                              United States Attorney

                              Jeremy R. Jehangiri
                              Assistant United States Attorney
                              P.O. Box 2638
                              Sioux Falls, SD 57101-2638
                              Telephone: (605) 357-2353
                              Facsimile: (605) 330-4410
                              E-Mail: jeremy.jehangiri@usdoj.gov

Penalties:

Count 1: 20 years in prison, a $250,000 fine, 3 years of supervised release, an additional 2 years upon revocation, $100 VAF, restitution, forfeiture.

Count 2: 20 years in prison, a $250,000 fine, 3 years of supervised release, an additional 2 years upon revocation, $100 VAF, restitution, forfeiture.